IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| MARYE WAHL, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| GENERAL ELECTRIC COMPANY, ) | Case No. 3:13-cv-00329 |
| GE HEALTHCARE, ) | Judge Trauger |
| GE HEALTHCARE AS, ) | |
| GE HEALTHCARE, INC., ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S SUPPLEMENTAL RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### SUPPLEMENTAL PRELIMINARY STATEMENT

The parties' extensive briefing and oral argument to date focused on whether New Jersey or Tennessee substantive law applies generally in this action. This brief narrows the focus to the precise issue before the Court on GEHC's motion for summary judgment, i.e., whether Tennessee or New Jersey law governs the timeliness of Plaintiff's claims. New Jersey law governs the timeliness of Plaintiff's claims because the goals Tennessee seeks to advance through the TSOR are adequately (albeit imperfectly) protected by the New Jersey statute of limitation, whereas the goals New Jersey seeks to advance through its tort law generally and its statute of limitation specifically are entirely thwarted by application of the TSOR. New Jersey has a far greater interest in having its law applied than does Tennessee, and as such applicable choice of law principles dictate application of the New Jersey statute of limitation rather than the TSOR.

I. THE *RESTATEMENT (SECOND) CONFLICT* OF LAWS APPLIES

The *Restatement (Second) of Conflicts of Laws § 145,* as adopted by the Tennessee Supreme Court in *Hataway v. McKinley*, 830 S.W.2d 53 (Tenn. 1992) requires application

of New Jersey law to determine whether Plaintiff's claim is timely. The Restatement approach – commonly referred to as the most significant relationship approach – "primarily advocates a governmental interest analysis." *Hataway v. McKinley*, 830 S.W.2d 53, 58 (Tenn. 1992). The analysis is guided "by general principles governing choice of law, including . . . 'the interests of each state in having its law applied' and 'the relevant policies of the forum.'" *Eastman v. Pope*, 3:09-CV-0825, 2011 WL 1323021, at * 2 (M.D. Tenn. Apr. 5, 2011) quoting *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 342 (6th Cir. 1997). The court is to evaluate the contacts "'according to their relative importance *with respect to the particular issue*,' and . . . this is to be accomplished by carefully examining the policies behind the laws of the interested states and the interests of those states in the claim." *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 343 (6th Cir. 1997) (emphasis added).

## II. THE RELEVANT CONTACTS ARE CLEAR AND NOT IN DISPUTE

The Restatement identifies four groups of contacts relevant to ascertaining the applicable rule of law, including (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

Here, the exact nature and extent of the contacts are not in dispute. First, Plaintiff's injury occurred in Tennessee because Plaintiff's nephrogenic systemic fibrosis first manifested in Tennessee. *See Montgomery v. Wyeth*, 580 F.3d 455 (6th Cir. 2009) ("the Tennessee Supreme Court has commented . . . that where the 'injury complained of, and the harmful effect thereof develops gradually over a period of time, the injury is 'sustained' ... when the harmful effect first manifests itself and becomes physically

2

ascertainable.'").

Second, the conduct causing the injury occurred in New Jersey. The central alleged occurrence in this action is that GEHC's warnings, labeling, and instructions for use of Omniscan rendered the product unreasonably dangerous because the warnings, labeling, and instructions for use did not reflect what GEHC knew or should have known, namely, that Omniscan can cause nephrogenic systemic fibrosis in patients with impaired renal function. GEHC's corporate headquarters is in New Jersey. Dkt. No. 55-1, GE Healthcare Defendants' Motion to Apply New Jersey Law to Plaintiffs' Punitive Damages Claim and For Summary Judgment on Plaintiffs' Punitive Damages Claim, p. 2. GEHC is the GE entity in the United States responsible for the manufacture of Omniscan. *Id.* at p. 7, n.5. GEHC is the GE entity in the United States responsible for the sale of Omniscan. *Id.* p. 7. GEHC generally directed its actions regarding Omniscan from New Jersey. *Id.* GEHC made labeling decisions regarding Omniscan in New Jersey. *Id.* at 2. GEHC made warning decisions regarding Omniscan in New Jersey. *Id.* GEHC made reporting decisions regarding Omniscan in New Jersey. *Id.* GEHC was subject to New Jersey law in selling Omniscan. *Id.* at 7. GEHC was subject to New Jersey corporate law when selling Omniscan. *Id.* New Jersey is where GEHC interacted with the FDA regarding Omniscan. *Id.* at p. 12. New Jersey is where GEHC interacted with the relevant medical community regarding Omniscan. *Id.* GEHC distributed Omniscan internationally and issued a uniform set of warnings and instructions for Omniscan. Dkt. No. 52, GEHC's Response to Additional Undisputed Material Facts, p. 5, Responses 27 and 28.

Third, GEHC principal place of business is in New Jersey. Dkt. No. 55-1, p. 2. Plaintiff resides in Tennessee.

3

Fourth, the relationship between the parties is centered in New Jersey. See *In re Bendectin Litig.*, 857 F.2d 290, 305 (6th Cir. 1988) (relationship of parties centered "where the tortious conduct and the safety of the product are regulated").

III. THE POLICIES UNDERLYING NEW JERSEY AND TENNESSEE LAW ARE CLEAR AND NOT SUBJECT TO DISPUTE

The considerations relevant to the choice of the applicable rule of law here include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the basic policies underlying the particular field of law, and (e) ease in the determination and application of the law to be applied. *Restatement (Second) of Conflicts of Laws § 6.* [1]

The New Jersey Supreme Court held in *Gantes v. Kason Corp.* that New Jersey's substantial interest in deterring manufacture and distribution of unsafe products within New Jersey outweighed Georgia's policy concerns in stabilizing Georgia insurance industry and keeping stale claims out of Georgia courts. 145 N.J. 478, 490, 679 A.2d 106, 111-12 (1996). The court held that New Jersey's statute of limitation rather than Georgia's statute of repose applied to a product liability action in which a product manufactured in New Jersey injured a plaintiff in Georgia. *Id.* at 115. While New Jersey

---

[1] The protection of justified expectations – while listed in Section 6 of the Restatement - is not an important consideration here. See Restatement Comment (b) ("persons who cause injury on nonprivileged occasions, particularly when the injury is unintentionally caused, usually act without giving thought to the law that may be applied to determine the legal consequences of this conduct. Such persons have few, if any, justified expectations in the area of choice of law to protect, and as to them the protection of justified expectations can play little or no part in the decision of a choice of law question"). Likewise, "the values of certainty, predictability and uniformity of result are of lesser importance in torts than in areas where the parties and their lawyers are likely to give thought to the problem of the applicable law in planning their transactions" *Id.*

follows the government interest approach to choice of law issues, *id.* at 109, its discussion of the goals of New Jersey's tort law and statute of limitation are germane here. The Court explained that New Jersey "has a strong interest in encouraging the manufacture and distribution of safe products for the public." *Id.* at 111-12. New Jersey also has a strong interest in "deterring the manufacture and distribution of unsafe products within the state." *Id.* The court explained that these interests are furthered "through the recognition of claims and the imposition of liability based on principles of strict products-liability law." *Id.* at 112. In addition to discussing the goals of New Jersey tort law generally, the court explained that the purposes of statutes of limitations are "to stimulate litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend, thus preventing the litigation of stale claims" and "to penalize dilatoriness and serve as a measure of repose." *Id.* at 110.

The policy goal of the TSOR is to control product liability insurance premiums and thereby reduce the price Tennessee consumers pay for products. In *Penley v. Honda Motor Co., Ltd.*, the Tennessee Supreme Court explained, "The General Assembly perceived that uncertainty as to future liability increased the premiums for product liability insurance, which in turn increased the costs of production and ultimately consumer prices. The legislature considered the limitation of future liability to a reasonable and specific period to be one of the most important keys in solving the perceived products liability crisis." *Penley*, 31 S.W.3d at 187. See also *Montgomery v. Wyeth*, 580 F.3d 455, 463 (6th Cir. 2009).

IV.  NEW JERSEY HAS A FAR GREATER INTEREST THAN TENNESSEE IN HAVING ITS LAW APPLY TO DETERMINE THE TIMELINESS OF PLAINTIFF'S CLAIMS

The final step in the Restatement choice of law analysis (see Section I) is to

5

evaluate each state's contacts with the occurrence and the parties (see Section II) in light of the considerations listed in Section 6 of the Restatement (see Section III) according to their relative importance with respect to the particular issue (i.e., the timeliness of Plaintiff's claims).

New Jersey has an interest in applying its tort law to encourage the manufacture and distribution of safe products for the public and to deter the manufacture and distribution of unsafe products within the state; this is so even when applying the New Jersey statute of limitation permits a claim by a non-Tennessee plaintiff against New Jersey manufacturer that would be barred if governed by the law of the state of injury. *See Gantes,* 679 A.2d at 111-12 (1996). New Jersey has an interest in having its statute of limitation applied "to stimulate litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend, thus preventing the litigation of stale claims" and "to penalize dilatoriness and serve as a measure of repose." *Id. at* 110. *Application of the TSOR thwarts these goals.* The TSOR extinguishes some claims – like Marye Wahl's - before they have accrued, that is, before they could have been brought. This does nothing to encourage the manufacture and distribution of safe products; rather, it encourages greater risk taking and less safeguards. Likewise, the goals of rewarding diligence and penalizing delay are thwarted because no matter how diligent someone in Marye Wahl's position may be, she cannot bring a claim that has not accrued. The foregoing strongly suggests that the location of the wrongful conduct is the most important contact for the issue of timeliness; the location of the injury is far less important given that New Jersey law expressly confers the protection of its laws to citizens of foreign states injured by New Jersey manufacturers.

It true that Tennessee has an interest is applying its statute of repose in products

6
Case 3:13-cv-00329   Document 65   Filed 10/31/13   Page 6 of 10 PageID #: 1343

liability actions to control product liability insurance premiums and thus reduce consumer prices, even when that forecloses a claim by a Tennessee plaintiff against non-Tennessee manufacturer. *See Montgomery v. Wyeth*, 580 F.3d 455, 463 (6th Cir. 2009). However, Tennessee's policy goals are adequately, though not perfectly, protected by New Jersey's statute of limitation – which requires suit be filed within two years of discovery of the cause of action. Rather than thwarting Tennessee's goal of controlling insurance premiums and consumer prices, New Jersey's statute of limitation advances the same end by imposing a relatively short limitation period. Given that the TSOR protects manufacturers within and without Tennessee, the place of injury is of little import to the goals the TSOR seeks to achieve.

Finally, the needs of the interstate system favor application of the New Jersey statute of limitation rather than the TSOR because the TSOR is so highly unusual. The Comments to § 6 of the Restatement concerning "the needs of the interstate and international systems" are unhelpful because they are concerned with "*what choice-of-law rules* further the needs of the interstate and international systems, rather than with what forum's substantive law furthers the needs of the interstate and international systems." *Jones ex rel. Jones v. Winnebago Indus., Inc.*, 460 F. Supp. 2d 953, 973 (N.D. Iowa 2006), discussing cmt. *d* to *Restatement (Second) of Conflicts of Laws § 6.* However, in *Jones ex rel. Jones* the Court explained that the interstate system could be disrupted by application of laws that were "abnormal" relative to other states' laws. *Id.* at 973. As the district court in *Montgomery* recognized, Tennessee's anticipatory life statute of repose appears to be "the harshest of those statutes" in the nation. *Montgomery v. Wyeth*, 540 F. Supp. 2d 933, 940 (E.D. Tenn. 2008) *aff'd,* 580 F.3d 455 (6th Cir. 2009).

**CONCLUSION**

7

For the foregoing reasons, Plaintiff prays this Court deny Defendants' Motion for Summary Judgment and grant such other or further relief as is proper.

Respectfully submitted,

**TORHOERMAN LAW LLC**

/s/Eric Terry
Tor A. Hoerman, #6229439 *(Admitted Pro Hac Vice)*
Eric Terry, #6282169 *(Admitted Pro Hac Vice)*
101 W. Vandalia St., Ste. 350
Edwardsville, IL 62025
Telephone: (618) 656-4400
Facsimile: (618) 656-4401
kbrennan@kbrennanlaw.com
thoerman@torhoermanlaw.com

and

/s/ R. Christopher Gilreath
R. Christopher Gilreath, BPR #18667
GILREATH & ASSOCIATES
200 Jefferson Avenue, Suite 711
Memphis, TN 38103
(901) 527-0511
(901) 527-0514 (facsimile)
chrisgil@sidgilreath.com

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that I served this notice via electronic filing to each person to whom it is directed or email for those not set up for electronic filing on this 31st day of October 2013.

/s/ Eric Terry

TO:

DLA PIPER
Christopher M. Strongosky, Esq.
Heidi L. Levine, Esq.
David J. Dino, Esq.
1251 Avenue of the Americas
New York, NY 10020
Ph: 212-335-4643
Fax: 212-884-8543
christopher.strongosky@dlapiper.com
heidi.levine@dlapiper.com

Dwight E. Tarwater
Matthew J. Evans
Paine, Tarwater, and Bickers, LLP
900 S Gay Street
Suite 2200
Knoxville, TN 37902
(865) 525-0880
det@painetar.com
mje@painetar.com